UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

INFO-HOLD, INC.,
    Plaintiff

vs

MUZAK HOLDINGS LLC AND
MUZAK LLC, et al.,
    Defendants

Case No. 1:11-cv-283
Black, J.
Litkovitz, M.J.

ORDER

This matter is before the Court on plaintiff Info-Hold, Inc.'s Motion to Incorporate Section 2.2(b) Into the Court's Protective Order and To Compel Defendants to Produce AEO [Attorneys Eyes Only] Material (Doc. 37). Defendants Muzak Holdings LLC and Muzak LLC (collectively "Muzak") have filed an opposing memorandum (Doc. 43), and plaintiff has filed a reply memorandum in support of its motion (Doc. 44). Plaintiff seeks an order from the Court incorporating into the Default Protective Order currently in effect in this case an optional provision provided for under the Local Patent Rules that directs defendants to provide all discovery identified as "Highly Confidential-Attorneys Eyes Only" to plaintiff's in-house counsel under specified conditions. (S.D. Ohio Local Patent Rules, Appendix A, ¶ 2.2(b)). Muzak opposes incorporation of the requested provision into the Default Protective Order. An evidentiary hearing on the motion was held before the undersigned on July 23, 2012.

I. Background

Info-Hold filed the complaint for patent infringement in this action against Muzak on May 3, 2011, asserting claims for infringement of U.S. Patent No. 5,991,374 (the '374 patent). (Doc. 1). The parties agree that S.D. Ohio Local Patent Rule 102.2 applies to this action. (Doc.

37 at 1-2; Doc. 43 at 2). Rule 102.2 provides that the "Default Protective Order" set forth in Appendix A of the Local Patent Rules automatically governs the production of any documents or information in a patent case unless the Court enters an alternative Protective Order. Appendix A provides at ¶ 2.2 that all information that has been designated as "HIGHLY CONFIDENTIAL-ATTORNEY EYES ONLY" may be disclosed only to:

> (a) The outside attorneys of record and their employees who are engaged in assisting in this action; provided that such does not include any persons participating in the prosecution of any present or future patent application (including the reexamination or reissue of any present or future patent) that is a counterpart to or related to the patents-in-suit . . .;
>
> (b) [Optional: The following in-house counsel of a receiving party, (1) who has no involvement in competitive decision-making or in patent prosecution involving ____ [specify subject matter areas], (2) to whom disclosure is reasonably necessary for this litigation, and (3) who has signed the "Agreement to Be Bound by Protective Order" in Exhibit A, may have access: _____;]

Paragraph 2.3 states that information that has been designated as "CONFIDENTIAL" may be disclosed only to:

> (a) The persons identified in paragraph 2.2; and
> (b) Any party or employee of a party to whom disclosure is reasonably necessary for this litigant and litigation who has signed the "Agreement to Be Bound by Protective Order" in Exhibit A.

Daniel J. Wood, Info-Hold's counsel of record in this lawsuit, is also Info-Hold's in-house counsel. Muzak has refused to provide documents marked "HIGHLY CONFIDENTIAL-ATTORNEY EYES ONLY" to Info-Hold because Muzak maintains Mr. Wood does not satisfy the criteria of ¶ 2.2(a) or (b). (Doc. 43 at 3). Muzak has refused to provide documents marked "CONFIDENTIAL" under ¶ 2.3 of the Protective Order because Mr. Wood has not executed the

"Agreement to Be Bound by Protective Order.[1]" (*Id.*). Info-Hold contends that Mr. Wood is entitled to review documents marked "HIGHLY CONFIDENTIAL-ATTORNEY EYES ONLY" under the "Optional" provision set forth in ¶ 2.2(b).

On January 23, 2012, the District Judge then assigned to this case, Judge Barrett, held a status conference in this case and directed the parties to confer regarding several matters, including AEO discovery, and to apprise his law clerk by the end of the week so that a follow-up conference could be set. (Doc. 43-5). Counsel for both sides followed up with Judge Barrett's law clerk, Stephen Schilling, as directed on January 27, 2012. (*See* Doc. 44-2, 1/27/12 email). Mr. Schilling informed counsel via email on that date that Judge Barrett would like the parties to brief the AEO discovery issue; he requested counsel to attempt to agree to a joint briefing schedule, which they could then file with the Court; and he asked that the parties let Mr. Schilling know as soon as possible if they were unable to agree on a briefing schedule and Judge Barrett would establish one. (*Id.*). Counsel were apparently confused as to what steps they were supposed to take following the email from Mr. Schilling (*see* Doc. 43-9, email chain between counsel), and the parties did not file a joint briefing schedule and one was not established by the Court.

Info-Hold filed the present motion on May 18, 2012. Info-Hold argues that the three-part test for whether discovery marked as "HIGHLY CONFIDENTIAL-ATTORNEYS EYES ONLY" may be disclosed to specified in-house counsel is satisfied because: (1) Mr. Wood has no

---

[1] Mr. Wood has since signed the "Agreement to be Bound by Protective Order" attached to the Local Patent Rules as Exhibit A. (Doc. 44, Exh. A).

3

involvement in "competitive decisionmaking" or in patent prosecution for the '374 patent; (2) disclosure to Mr. Wood is reasonably necessary for the litigation; and (3) Mr. Wood has signed the "Agreement to Be Bound by Protective Order" set forth in Appendix A of the Local Patent Rules. In support of its position, Info-Hold has submitted Mr. Wood's declaration (Doc. 37-1), in which he states as follows:

- Mr. Wood began his association with Info-Hold in July of 1994, at which time he performed a variety of functions for the company, including "sales, marketing, and legal matters, and [he] generally had input into competitive decisionmaking." (*Id.*, ¶ 2).

- He left Info-Hold in November 2001 and returned to the company on an unspecified date, at which time he assumed the sole function of litigating the patents Info-Hold held. (*Id.*, ¶¶ 4, 5).

- He has "not participated in, contributed to, or been apprised of any decision-making functions at Info-Hold" since his return to the company. (*Id.*, ¶ 6).

Info-Hold has also submitted the declaration of Joey C. Hazenfield, the CEO of Info-Hold. (Doc. 32-2). Mr. Hazenfield states that since rejoining the company, Mr. Wood has had "no input or role in competitive decision making whatsoever. Nor is [he] kept 'in the loop' on such decisions made by Info-Hold management." (*Id.*, ¶ 7).

Muzak contends that the Court should deny Info-Hold's motion on three grounds. (Doc. 43). First, Muzak contends that the motion is procedurally improper because Info-Hold failed to meet and confer with Muzak as required by the District Court's January 23, 2012 minute entry, by S.D. Ohio Civ. R. 37.1, and by the undersigned's Rules of Procedure. Second, Muzak contends the motion to compel is inappropriate because Muzak made the documents Info-Hold seeks to compel available months ago and would have provided them had Info Hold complied with the Default Protective Order currently in place. Third, Muzak contends that Info-Hold has

not shown good cause to modify the Default Protective Order because the risk of inadvertent disclosure is high given Mr. Wood's role with the company, and the risk of disclosure outweighs any potential prejudice to Info-Hold's case.

## II. Info-Hold's motion is not procedurally improper.

Muzak contends that Info-Hold's motion should be denied because by filing the motion, Info-Hold violated the Court's January 23, 2012 order and both S.D. Ohio Civ. R. 37.1 and the undersigned's procedures, which provide that motions relating to discovery shall not be filed in this Court unless counsel have first exhausted among themselves all extrajudicial means for resolving their differences. However, a review of the record demonstrates that counsel followed up with Judge Barrett's law clerk regarding AEO discovery as directed by the Court on January 27, 2012 (*see* Doc. 44-2, 1/27/12 email), and they communicated with each other thereafter in an unsuccessful effort to resolve the discovery matter. (Doc. 43, Exs. 9, 10, 11, 12). Accordingly, Info-Hold's motion is properly before the Court for consideration.

## III. Info-Hold has not carried its burden to establish cause for modification of the Default Protective Order.

The entry of a protective order rests with the sound discretion of the Court. *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 227 (6th Cir. 1996). The party who seeks to modify a protective order has the burden of establishing good cause for the modification. *Playa Marel, P.M., S.A. v. LKS Acquisitions, Inc.*, C-3-06-366, 2007 WL 756697, at *3 (S.D. Ohio March 8, 2007) (Rose, J.). See also *In re Southeastern Milk Antitrust Litigation,* No. 2:08-MD-100, 2009 WL 3713119, at *1 (E.D. Tenn. Nov. 3, 2009). For the reasons set forth below, the Court finds that Info-Hold has not come forward with sufficient information to carry its burden.

In *United States Steel Corp. v. United States*, 730 F.2d 1465 (Fed. Cir. 1984), the Federal Circuit addressed the concerns surrounding the possibility of inadvertent disclosure of confidential business information by in-house counsel who, like counsel retained by other parties, require access to such information. The Court held that an attorney should not be denied access to sensitive business information based solely on his status as in-house counsel. Rather, the trial court must determine on a case-by-case basis "[w]hether an unacceptable opportunity for inadvertent disclosure [of confidential information] exists" based on the facts before it. *Id*. at 1468. The determination in a particular case should turn on the extent to which counsel is involved in "competitive decisionmaking" with its client. *Id*. at 1468-69. The Court in *United States Steel* described "competitive decisionmaking" as "shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *Id*. at 1468 n.3.

Court decisions after *United States Steel* shed further light on the meaning of "competitive decisionmaking." In-house counsel has been found to be a "competitive decisionmaker" where both counsel's affidavit and defendant's description on its website indicated counsel was involved in providing "a wide range of advice," including legal and corporate development advice; counsel admitted he had some involvement in the preparation and prosecution of defendant's patents; the company's website noted counsel's experience in licensing; and counsel directly advised the CEO and other members of management on these issues and often attended Board meetings. *Datatrak Intern., Inc. v. Medidata Solutions, Inc.*, No.

1:11cv458, 2011 WL 3652444, at *2 (N.D. Ohio Aug. 19, 2011) (citing *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465 (9th Cir. 1992) (in-house attorney denied access to confidential information where he advised client on a host of legal issues); *Wi-Lan, Inc. v. Acer, Inc.*, Nos. 2:07cv473, 07cv474, 2009 WL 1766143 (E.D. Tex. June 23, 2009) (distinguishing other cases where courts have found legal advisors who advised on a wide range of legal issues to be competitive decision-makers on the ground in-house counsel's involvement was limited to litigation and settlement negotiations); *Sprint Communications Co. v. Big River Telephone Co.*, No. 08-2046-JWL, 2008 WL 4401690 (D. Kan. Sept. 16, 2008) (attorney was not a competitive decision-maker where attorney worked exclusively in plaintiff's litigation department). Negotiating the terms of licensing agreements as part of settling lawsuits has been found to constitute competitive decisionmaking where the negotiations required in-house counsel to evaluate the strength of the patent and the company and competitor's products implicated by the patent, and in-house counsel's role thereby placed her "in the untenable position of having to either refuse to offer crucial legal advice at times or risk disclosing protected information." *Intel Corp. v. VIA Technologies, Inc.*, 198 F.R.D. 525, 530 (N.D. Cal. 2000) (citing *Brown Bag*, 960 F.2d at 1472).

Prosecuting patents may constitute competitive decisionmaking. *See Methode Electronics, Inc. v. DPH-DAS LLC*, 679 F.Supp.2d 828 (E.D. Mich. 2010). An attorney is not necessarily involved in competitive decisionmaking simply because he prosecutes patents. *See In re Deutsch Bank Trust Company America*, 605 F.3d 1373, 1378 (Fed. Cir. 2012). "Because patent prosecution is not a one-dimensional endeavor and can encompass a range of activities, it

7

is shortsighted to conclude that every patent prosecution attorney is necessarily involved in competitive decisionmaking." *Id*. at 1379. Thus, whether an attorney who prosecutes patents is involved in competitive decisionmaking is a determination that must be made on a case-by-case basis. *Id*. Where there is a close relationship between the patents counsel prosecutes and the area involved in the litigation, counsel's activities may be said to bring him with the definition of "competitive decisionmaker." *See Methode Electronics,* 679 F.Supp.2d at 833-35.

Paragraph 2.2(b) of this Court's Default Protective Order incorporates the case-by-case standard of *United States Steel* and its progeny by providing for the disclosure of highly confidential Attorney Eyes Only discovery to in-house counsel "who has no involvement in competitive decision-making or in patent prosecution" involving the specific subject matter involved in the lawsuit.

In the present case, Mr. Wood generally represented to the Court in his declaration filed prior to the evidentiary hearing that he has no involvement in Info-Hold's competitive decisionmaking. (Wood Decl., Doc. 37-1, ¶ 7). Mr. Hazenfield, Info-Hold's CEO, likewise generally represented to the Court in his declaration that Mr. Wood is not involved in competitive decisionmaking at Info-Hold. (Hazenfield Decl., Doc. 37-2, ¶ 7). At the evidentiary hearing, Mr. Wood testified that by "competitive decisionmaking," he means involvement in matters such as company strategy, pricing, competitive bidding, sales, service, product growth, production, and manufacturing. Mr. Wood testified in response to questioning by defense counsel: "I literally just do these patents." Yet, defendants' counsel elicited additional testimony from Mr. Wood at the evidentiary hearing that calls into question Mr. Wood's unequivocal

8

testimony, as well as the conclusory assertions made by both Mr. Wood and Mr. Hazenfield in their declarations, and which indicates that Mr. Wood's role at Info-Hold is not so clearly defined.

First, although Mr. Wood testified at the hearing that he has not served as general counsel for Info-Hold since leaving the company in 2001, Muzak has submitted evidence that contradicts Mr. Wood's testimony and indicates Mr. Wood's role with the company did not change following his return in 2002. In a 2007 Securities and Exchange Commission filing, Info-Hold represented that Mr. Wood "has served as General Counsel from 1994 to 2001 and 2002 to present. His focus has been on patent litigation and patent application prosecution." (Doc. 43, Exh. 6, 11/5/07 Info-Hold Amendment 9 to Form S-1/A Registration Statement, p. 18). The description of Mr. Wood's role with the company suggests that he has performed the same duties during his entire tenure with the company. Second, after initially representing at the hearing that he had taken part in licensing discussions "in the past," Mr. Wood conceded upon further questioning that he also "presently" participates in licensing matters. Third, Mr. Wood testified that he handles non-patent matters, including collection matters and employee/employer labor matters, for Info-Hold on an "ad hoc basis." In fact, Mr. Wood represented Info-Hold in a lawsuit the company brought for both patent infringement and breach of an employment agreement in 2005, which was after his return to the company. *See* Doc. 43, Exh. 15, *Info-Hold, Inc. v. Teresa Arim Pearce, dba Ad Concepts by Teresa*, No. 1:05-cv-203 (Dlott, J.) (Doc. 1). While Mr. Wood explained that the lawsuit took place seven years ago, this was subsequent to 2002 and therefore was within the time period during which Mr. Wood testified he was "just

do[ing] patents."

The ambiguous and sometimes conflicting testimony presented at the evidentiary hearing fails to disclose the exact nature and full breadth of Mr. Wood's role with Info-Hold. Info-Hold did not present any documentary evidence either with its motion or at the evidentiary hearing to clarify the specific activities Mr. Wood performs for the company. The Court therefore lacks a sufficient evidentiary basis for assessing the validity of the conclusory statements made by Mr. Wood and Mr. Hazenfield in their declarations that Mr. Wood does not engage in competitive decisionmaking. *Cf. Intel Corp.*, 198 F.R.D. at 529 ("Unrebutted statements made by counsel asserting that he does not participate in competitive decisionmaking, which the court has no reason to doubt, form a reasonable basis to conclude that counsel is isolated from competitive decisionmaking.") (citing *Matsushita Elec. Indus. Indus. Co. v. United States*, 929 F.3d 1577, 1580 (Fed. Cir. 1991)). Accordingly, Info-Hold has failed to carry its burden on the first prong of the three-part test for modification of the Default Protective Order.

The Court further finds that weighing against the disclosure of AEO information to Mr. Wood are concerns as to whether the solution proposed by Info-Hold - the use of a password protected computer - would be adequate to protect Muzak's highly confidential information. Muzak has produced documentation showing that during the course of this litigation, Mr. Wood disclosed to defendants' counsel confidential and AEO documents from another lawsuit (the "Trusonic litigation"). (Doc. 52)[2]. Mr. Wood attributed the error to a law student who was

---

[2]Muzak introduced this documentation as an exhibit at the hearing and the Court accepted it into evidence.

working for him as a paralegal during the Trusonic litigation. While the Court finds no reason to believe the disclosure was intentional, Mr. Wood's failure to ensure the nondisclosure of confidential information entrusted to him causes the Court to question whether a password protected computer would prevent the disclosure of Muzak's highly confidential information by Mr. Wood. The Court concludes there is a high risk of inadvertent disclosure under the circumstances of this case that weighs against modification of the Default Protective Order.

Info-Hold has also failed to carry its burden to show that disclosure of the AEO information to Mr. Wood is reasonably necessary for this litigation so as to meet the second prong of the test for modification. Info-Hold contends that if the Default Protective Order is not modified and the company is required to obtain outside counsel, it will suffer "extreme hardship." *See United States Steel*, 730 F.2d at 1468 (because litigation was extremely complex and at an advanced stage, and it was accepted by the Court of International Trade that present counsel was not involved in competitive decisionmaking, forcing plaintiff to rely on newly retained counsel would create "an extreme and unnecessary hardship."); *Novak v. Farneman*, No. 2:10cv768, 2010 WL 3603726, at *3 (S.D. Ohio Sept. 10, 2010) (Kemp, M.J.) (the need to prevent patent counsel from seeing highly sensitive information can be overcome by showing of "exceptional hardship."). Info-Hold asserts that it will suffer financial hardship and be placed at a severe tactical disadvantage if Mr. Wood is not permitted to represent the company. While Info-Hold has made certain representations concerning its overall financial condition, it has not submitted any financial documentation to support its contention that it will suffer financial hardship if it is required to retain outside counsel. Info-Hold's assertions concerning its financial

11

condition, in the absence of any supporting documentation, are insufficient to allow the Court to assess whether retaining outside counsel would impose an extreme hardship on the company. Furthermore, because the Markman hearing has not yet been held and trial is not scheduled in this matter until October 2013, there is no indication that Info-Hold will be unduly prejudiced from a tactical standpoint if it is required at this early stage of the case to retain outside counsel, as it has done in other patent infringement cases.[3]

Info-Hold has failed to carry its burden to show there is good cause to modify the Default Protective Order currently in place pursuant to the Local Patent Rules. Info-Hold has failed to satisfy the Court that (1) Mr. Wood has no involvement in competitive decisionmaking for the company or the prosecution of any patent related to the '374 patent, and (2) disclosure to Mr. Wood is reasonably necessary for this litigation.

### IT IS THEREFORE ORDERED THAT:

Plaintiff's motion to modify the Default Protective Order and to compel defendants to produce Attorneys Eyes Only information to plaintiff's counsel of record, Mr. Wood (Doc. 37), is DENIED.

### IT IS SO ORDERED.

Date: 7/26/2012

Karen L. Litkovitz
United States Magistrate Judge

---

[3]Muzak has submitted documentation showing that Theodore R. Remaklus of Wood Herron & Evans served as lead counsel with Mr. Wood in two cases brought by Info-Hold in this Court - *Info-Hold, Inc. v. Trusonic, Inc.*, No. 1:06-cv-00543, and *Info-Hold, Inc. v. Sound Merchandising*, No. 1:03-cv-00925, both of which were filed on June 11, 2012. (*See* Doc. 43, Exhs. 14, 16).