## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

INFO-HOLD, INC.,                                    Case No. 1:11-cv-283

     Plaintiff,

                                      Judge Timothy S. Black

     v.

MUZAK HOLDINGS LLC, *et al.*,

     Defendants.

## ORDER ON CLAIM CONSTRUCTION

The parties have each submitted briefs in support of their proposed claim constructions. (Docs. 40, 41, 46, 47, 48, 52, 55, 57, and 59). Additionally, the Court held a *Markman* hearing on August 10, 2012.

## I.  THE PATENT AT ISSUE

Plaintiff Info-Hold, Inc. is alleging infringement of United States Patent No. 5,991,374 ("the '374 patent") by Defendants Muzak Holdings LLC and Muzak LLC. The patent survived a 2011 Reexamination Procedure by the United States Patent and Trademark Office as Patent No. 5,991,374 C1 ("the '374 C1 patent").

The '374 patent - titled "*Programmable Messaging System for Controlling Playback of Messages on Remote Music-On-Hold-Compatible Telephone Systems and Other Message Output Devices*" - is generally directed to a system and methods for the remote control of on-hold, overhead, and other message playback devices located at one or more remote locations.

The '374 patent issued with thirty-six claims covering both the system and the method for remotely controlling message playback. While the scope of the claimed invention is disputed between the parties, the claimed invention can be generally summarized as achieving the desired control over messaging by using a computer that is programmed to push control signals to linked remote playback devices. These remote playback devices have a memory on which the various message options have been previously stored, and the ability to manage message playback according to the incoming control signal, and an output through which the chosen message is played. The control signals originating from the computer and pushed out to the remote playback devices contain instructions that include the intended device and the desired message. The designated playback device then plays the desired message.

## II.   THE CLAIMS AT ISSUE

The disputed claim interpretation revolves around the details associated with the on-hold messaging claims.

The first area of dispute centers around the phrase "when a caller is placed on hold" and the parties have identified six claim terms using that language: (1) "when a caller is placed on hold;" (2) "when callers are placed on hold on the respective telephone systems;" (3) "generating a control signal using said computer for said message playback device corresponding to said selected remote site to play said selected message when a

caller is placed on hold on the respective telephone system; " (4) "storing a library of discrete and individually accessible messages at each of said remote sites for playback on the respective message playback device when a caller is placed on hold;" (5) "for playing selected messages through an input of said message playback device when a caller is placed on hold; and (6) "to provide said accessed message to said output in accordance with said controls signals when a caller is placed on hold."

The second area of dispute concerns individual terms used to describe the functionality of the device, and includes the terms: (7) "computer;" (8) "programmable to;" (9) "control signal;" and (10) "discrete and individually accessible messages."

## III.   STANDARD OF REVIEW

Claim construction is a matter of law to be decided exclusively by the Court. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370. "[T]he claims of a patent define the invention to which the patentee is entitled the right to exclude." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004). In construing claims, the Court determines whether or not a term requires construction. *United States Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). The Court is not required to accept a construction of a term, even if the parties have stipulated to it, but instead may arrive at its own construction of claim terms, which may differ from the constructions proposed by

the parties. *Pfizer, Inc. v. Teva Pharms., USA, Inc.*, 429 F.3d 1364, 1376 (Fed. Cir. 2005).

Courts must first look to intrinsic evidence (*i.e.*, the claim itself, specifications, prosecution history and prior art cited in the patent) to resolve any ambiguities. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). "The appropriate starting point [...] is always with the language of the asserted claim itself." *Comark Comm, Inv. v. Harris Corp.*, 156 F.3d 1186 (Fed. Cir. 1998). Claim terms are "generally given their ordinary and customary meaning." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005). "The ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective date of the patent application." *Id.* at 1313. Absent an express intent to the contrary, a patentee is presumed to have intended the ordinary meaning of a claim term. *York Prods. v. Cent. Tractor Farm & Family Ctr.*, 99 F.3d 1568, 1572 (Fed. Cir. 1996). Claim terms cannot be narrowed by reference to the written description or prosecution history unless the language of the claims invites reference to those sources. *See, e.g., McCarty v. Lehigh Valley R.R.*, 160 U.S. 110, 116 (1895) ("If we once begin to include elements not mentioned in the claim in order to limit such claim . . ., we should never know where to stop").

The Court must also consider the specification "to determine whether the inventor has used any terms in a manner inconsistent with their ordinary meaning." "When the

-4-

specification explains and defines a term used in the claims, without ambiguity or incompleteness, there is no need to search further for the meaning of the term." *Multiform Desiccants, Inc. v. Medzam Ltd.*, 133 F.3d 1473, 1478 (Fed. Cir. 1998).

Finally, the Court may consider "the prosecution history of the patent, if in evidence." *Vitronics,* 90 F.3d at 1582. The prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution. *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995). The prosecution history "constitutes a public record of the patentee's representations concerning the scope of and meaning of the claims, and competitors are entitled to rely on those representations when ascertaining the degree of lawful conduct." *Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1369 (Fed. Cir. 2005).

In most circumstances, analysis of the intrinsic evidence alone will resolve claim construction disputes. *See Vitronics*, 90 F.3d at 1583. However, if the intrinsic evidence does not resolve ambiguities, extrinsic evidence may be considered. Extrinsic evidence "can shed light on the relevant art,' but is less significant than the intrinsic record in determining the 'legally operative meaning of disputed claim language.'" *C.R. Bard, Inc. v. United States Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004) (*quoting Vanderlande Indus. Nederland BV v. Int'l Trade Comm'n*, 366 F.3d 1311, 1318 (Fed. Cir. 2004)). Dictionaries and technical treaties, which are extrinsic evidence, hold a "special place" and may sometimes be considered along with the intrinsic evidence when determining the ordinary meaning of claim terms. *Id.* at 1267. However, the Federal Circuit cautions

against the use of nonscientific dictionaries, lest dictionary definitions be converted into technical terms of art having legal, not linguistic significance. *Id.*

## IV.  THE COURT'S CONSTRUCTION OF THE CLAIMS

### A.  Joint Claim Constructions

The Court adopts the joint claim constructions proposed by the parties in the Joint Claim Construction Chart found at Doc. 40, Ex. B at 2-3.

### B.  Disputed Terms

#### 1.  *"When a caller is placed on hold"*

The parties dispute the construction of six similar claim phrases relating to the message playback feature of the patented device: (1) "when a caller is placed on hold;" (2) "when callers are placed on hold on the respective telephone systems;" (3) "generating a control signal using said computer for said message playback device corresponding to said selected remote site to play said selected message when a caller is placed on hold on the respective telephone system;" (4) "storing a library of discrete and individually accessible messages at each of said remote sites for playback on the respective message playback device when a caller is placed on hold;" (5) "for playing selected messages through an input of said message playback device when a caller is placed on hold;" and (6) "to provide said accessed message to said output in accordance with said controls signals when a caller is placed on hold."  (Doc. 22 at 4-13).

Because terms in a patent must be constructed consistently, the Court will offer one construction for the phrase "when a caller is placed on hold."

The primary dispute between the parties is whether the phrase indicates that message playback takes place *during* the time the caller is placed on hold or whether the playback *starts* when a caller is placed on hold. (Doc. 56 at 9). Plaintiff offers the following claim construction: "to be heard by outside parties to telephone calls who are placed on hold by users of respective MOH telephone systems." Defendants propose the simple construction "when a caller is placed on hold." (Doc. 22 at 7).

Defendant argues that the plain language of the claims refers to a momentary act of placing a caller on hold. Although "when" can mean either a momentary event or "while," Defendant argues that "placing" a caller on hold clearly references a momentary act. (Doc. 56 at 10). The Court agrees that the plain meaning of the claim terms favors a construction of "when" as meaning "at the moment." "Placed" indicates an action that must occur at a specific moment, indicating that the message must begin playing at that moment. Under Plaintiff's proposed construction, the term "placed" would have no meaning, and an interpretation that reads out a claim language or renders it meaningless cannot be correct. *Bicon, Inc. v. Starumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006)

The context of the claim terms confirms this construction. Claim seven requires that messages be accessed, delivered from storage, and played when a caller is placed on hold and also provides the system operator with the option to choose how many times a message is played. (*See* Doc. 40, Ex. A at 46). A message cannot be played until it is accessed; and if a message is only accessed when a caller is placed on hold, then it cannot

-7-

already be playing in a continuous loop system.

Finally, the prosecution history also supports the construction of "when" as "at the moment." During reexamination, Plaintiff added the phrase "when a caller is placed on hold" to several claims. (*See* Doc. 40, Ex. A at 46-49). To survive reexamination, Plaintiff argued that the messages were played when the caller is placed on hold, significantly modifying the body of the claims to define the timing of message access and message playback.

Plaintiff disputes this interpretation, offering many rhetorical flourishes and analogies, but little evidence. Plaintiff's principal substantive argument is that the system as understood by a person skilled in the art at the time of the filing would have been a continuous loop system because no other system existed. However, as Plaintiff did not provide any evidence to support this assertion, it must necessarily fail.

Therefore, the Court finds that in each of the six disputed claim terms recited above, the phrase "when a caller is placed on hold" shall be constructed to mean "at the moment a caller is placed on hold."

### 2. *"computer"*

Plaintiff proposes that "computer" be constructed as "a programmable electronic device capable of performing data processing functions and having a memory device, an input device, and a display." (Doc. 33 at 11). Defendant argues that this definition goes beyond the core functionality mentioned in the patent and improperly imports additional limitations. (Doc. 40 at 22). Defendant argues against any construction requiring certain

components, and suggests a construction of "a programmable electronic device that receives, processes, and presents data." (*Id.*)

While Defendant admits that the specification does include the required features for some embodiments, Defendant argues that the specification fails to state that the features are required for every embodiment of the claimed invention. (Doc. 40 at 23). However, the Court notes that the specification specifically states that "each client computer comprises a central processing unit, a memory device, a display device, such as a video monitor, and at least one input device, such as a keyboard and preferably also a mouse." (Doc. 55 at 4). Where the specification details the meaning of a "computer," the Court finds that the inventor specifically referenced necessary components of the device.

Accordingly, the Court adopts Plaintiff's proposed claim construction.

### 3.    *"programmable to"*

Plaintiff proposes that "programmable to" be constructed as "capable of being programmed." In support, Plaintiff argues that "it is axiomatic that a device, programmable to accomplish X, is capable of being programmed to do X." (Doc. 41 at 22). Defendant contends that Plaintiff's proposed construction is too broad, and that it would render all computers and playback devices as infringing regardless of what they are actually programmed to do. (Doc. 40 at 24). Instead, Defendant proposes a construction of "programmed," arguing that the devices must already be programmed to carry out the functionality of the message playback device. (*Id.* at 25).

The Court finds Defendant's argument unpersuasive. Not every computer would

-9-

be infringing, because the computer must first have the basic software formatting necessary to enable it to be programmable to perform the claimed functionality (in other words, it must be programmed to be programmable). "Programmable" means just that: "capable of being programmed." Accordingly, the Court adopts Plaintiff's proposed construction.

### 4. *"control signal"*

Plaintiff proposes that "control signal" be constructed as:

A communication, generated by said computer capable of interacting with at least one playback device, containing a command involving the control of playback devices and/or messages.

(Doc. 33 at 4).

Defendant proposes the claim term be constructed as:

An electronic signal generated by said computer containing instructions for controlling the operation of one or more remote playback devices.

(*Id.*)

Defendant's principal objection to Plaintiff's proposed construction is that Plaintiff's wording is "unnecessarily cumbersome and confusing." (Doc. 40 at 25). Plaintiff responds that the use of the words "communication," "command," and "control" is an attempt to employ words illuminated elsewhere in the claims and specifications. (Doc. 41 at 8).

Given that the parties do not dispute that the proposed constructions have the same meaning, the Court agrees that Defendant's construction is more straightforward, and thus

-10-

preferred. *See Control Res., Inc. v. Delta Electronics, Inc.*, 133 F. Supp. 2d 121, 127 (D. Mass 2001) ("The claims must be translated into plain English so that a jury will understand. Thus, accurate words that convey the essence of the invention are needed.").

    5.    *"discrete and individually accessible messages"*

At the *Markman* hearing, Defendant submitted that it agrees to Plaintiff's proposed construction for this term. Accordingly, "discrete and individually accessible messages" shall be construed to mean "messages that are individually identifiable and separately accessible."

## VI.    CONCLUSION

Therefore, the parties shall construe the contested terminology of the '374 patent as set forth in this Order.

**IT IS SO ORDERED.**

Date:  9/10/12                                  *s/ Timothy S. Black*
                                                Timothy S. Black
                                                United States District Judge