**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

INFO-HOLD, INC.,

                Plaintiff,

      v.

MUZAK HOLDINGS LLC AND
MUZAK LLC,

                Defendants.

Civil Action No.  1:11-cv-283

Judge Timothy S. Black

Magistrate Judge Karen L. Litkovitz

**PLAINTIFF, INFO-HOLD, INC.'S RESPONSE IN OPPOSITION TO
MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANTS MUZAK
HOLDINGS LLC AND MUZAK LLC FOR PARTIAL SUMMARY
JUDGMENT ON INFO-HOLD'S CLAIMS OF INDUCEMENT OF
INFRINGEMENT AGAINST MUZAK HOLDINGS LLC AND MUZAK LLC
AND DISMISSING MUZAK HOLDINGS LLC FROM THE CASE**

This Memorandum in Opposition will separately address the inducement

issues of Muzak Holdings LLC and Muzak LLC in separate sections.  Section I will

address Muzak Holdings LLC and Section II will address Muzak LLC.  The footnotes

are consecutive through the two Sections.

**SECTION I: INDUCEMENT BY MUZAK HOLDINGS LLC**

*Argument*

35 U.S. Sec. 271(b) provides that "whoever actively induces infringement of a

patent shall be liable as an infringer."

Patent infringement is a tort.  Infringement of a system claim is a matter of strict

liability.  Infringement of a method claim requires that all steps in the method be performed.[1]

A party may be liable for inducing infringement if it is aware of the patent, and either (*a*)

---

[1] See *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060 (2011).

performs some of the steps and induces another party to perform the remaining steps or (*b*) induces other parties collectively to perform all of the claimed steps.[2]  Thus, induced infringement of a patent can be found even if there is no single party who would be liable for direct infringement.  Inducement also covers a broad range of activities.

> "[I]nducement does not require that the induced party be an agent of the inducer or be acting under the inducer's direction or control to such an extent that the act of the induced party can be attributed to the inducer as a direct infringer. It is enough that the inducer "cause[s], urge[s], encourage[s], or aid[s]" the infringing conduct and that the induced conduct is carried out. *Arris Grp., Inc. v. British Telecomms. PLC*, 639 F.3d 1368, 1379 n.13 (Fed. Cir. 2011); *see also Tegal Corp. v. Tokyo Electron Co*., 248 F.3d 1376, 1379 (Fed. Cir. 2001); *Nat'l Presto Indus., Inc. v. West Bend Co*., 76 F.3d 1185, 1196 (Fed. Cir. 1996) (analogizing inducement to aiding and abetting violations of criminal laws)."[3]

<u>Inducement Begins With Knowledge of the '374 Patent</u>

This Court has been presented with repeated references to a telephone call between Daniel J. Wood and Michael Zendan, then General Counsel for Muzak and an officer of <u>both</u> Muzak LLC and Muzak Holdings LLC, which took place in June of 2006.  Neither party in this case denies that the '374 patent was discussed during that call.  However else that call and its content might impact other issues in this case, it is beyond dispute that Muzak Holdings LLC cannot deny specific, actual knowledge of the '374 patent after that date.

Muzak Holdings LLC, ("Holdings") claims that it cannot be liable for inducing infringement because it makes nothing, sells nothing, does nothing, and, therefore, induces nothing.  While one *might* conjure up the angels on the head-of-a-pin riddle, one *actually* ponders how many employees it takes to perform Muzak Holdings' professed function, i.e., to do nothing.  But because Holdings actually lists certain key employees on web pages

---

[2] See *Akamai Tech., Inc., v Limelight Networks, Inc.*, 692 F.3d 1301 (Fed. Cir. 2012).
[3] *Id* at 1308.

available to the public, the idea that it does nothing seems to give way to the idea that it, in fact, does something after all; hence, the need for employees.[4]

And indeed, Muzak Holdings LLC identifies not only a purpose for its existence, but also a purpose for providing an incentive program to certain individuals and other entities for successfully furthering those purposes. Holdings published what it identified as "Muzak Holdings LLC Key Employee Incentive Plan,"[5] (effective as of January 1, 2009) in which it was stated, "[t]his plan is intended to induce such employees to maximize their contribution to greater profitability and efficient utilization of capital while developing a highly competent workforce…."[6]  With this incentive plan Muzak Holdings LLC declares its desire to have its workforce maximize Holdings' profitability.  But where would such profit come from? Again, the answer appears to be available for all to see.

Various business-reporting services provide valuable information on companies of interest to investors and other interested parties.  These services are evaluated on their veracity and on the quality of the information they provide.  They are regularly in touch with, and are often contacted by, the companies they review and report on.

Entities such as *Business Week, Inside View,* and *Glass Door,* have all reported on Muzak Holdings LLC.  And while such reports are not published directly by the target company, they are based upon information provided by the company being written about.  Accordingly, the integrity of the information provided to the public is of concern to all.

---

[4] See Exhibit A Job Listings.
[5] Exhibit B.
[6] Id.

It is significant, then, when different services report <u>identical</u> descriptions of what it is that Muzak Holdings does.  The complete congruity of the content can only be explained as either plagiarism or faithful reporting of information provided by Muzak Holdings LLC.

The following is contained in a document published on the web on May 5, 2012:

> **Overview/Description:**
> "Muzak Holdings LLC provides business music programming services to clients in the United States. It designs, delivers, and installs custom music, voice messaging, digital signage networks, drive-thru equipment, and professional sound systems. The company also offers scent solutions; and closed circuit televisions that are video management systems. It serves retail, hospitality, and restaurant and bar, quick services restaurant, healthcare, and financial industries." [7]

Moreover, Muzak Holdings LLC has publicly posted openings for positions such as Product Executive, Account Executive.  These positions are necessary to develop and market the products that customers use to infringe the '374 patent.

Whether Muzak Holdings LLC employs individuals for the purposes stated above or not is a question of fact.  If they are not employees of Holdings, but rather, they are employees of Muzak LLC, then a material question of fact remains as to Holdings' role in the operation and success of Muzak LLC.

Indeed, Holdings is downright cavalier in its willingness to hold itself out to the public as an entity that "provides business music programming services to clients in the United States."  And whether Holdings performs some or all of those functions

---

[7] Exhibit C.

by itself or through Muzak LLC, it is clearly engaged in actively promoting the distribution of devices, systems, and programs that infringe the '374 patent.

Moreover, for public relations purposes, other companies have touted their dealings with Holdings.  For example, EMC2, a data management company, extols its own abilities by pointing to its ability to manage the high volume data flow required to service Muzak Holdings LLC.[8]  (The press release also refers to Muzak Holdings' IT organization and how that group is working on changes to Muzak's "program delivery.")

Under the standard for reviewing motions for summary judgment, the Court must construe all facts and draw all justifiable inferences in favor of the non-moving party and against the moving party.  See *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).  Thus, the Court should hold that Muzak Holdings LLC is doing just what it appears to be doing: actively and knowingly aiding, i.e., inducing, Muzak LLC and its customers to infringe the '374 patent.  Holdings' entanglement with Muzak LLC is broad, pervasive and culpable.  And then there's the money.

*Hundreds of Millions of Dollars Are Unaccounted For*

Despite the worldwide announcements of Mood Media's acquisition of Muzak Holdings LLC in 2011, Defendants Muzak have failed to provide discovery as to the disposition of the proceeds from that acquisition.  Holdings purportedly received around $345 million from Mood Media.[9]  Muzak stated in discovery responses that it is aware of no documents surrounding that transaction and that

---

[8] See Exhibit D.  Press release from EMC2.
[9] See Exhibit E.  Press release on acquisition.

Muzak Holdings LLC "has no bank accounts."[10]  A material question of fact remains

as to where that money went and how much, if any, was funneled to Muzak LLC to

fund its operation and development.

As named party to the Chapter 11 bankruptcy proceedings, counsel for Muzak

Holdings LLC urged allowances from the court so that funds could be diverted to

Muzak so that it could continue to operate and generate profits with which to settle

with creditors.  It would be strange, indeed, for Muzak Holdings to plead with the

court for financial leeway and consideration in favor of Muzak LLC, but then provide

not a single dollar to it upon receipt of the better part of half a billion dollars.

The better view (and consistent with Ockham's Razor) is that Holdings has

funded Muzak LLC with at least some of the acquisition money.  And money has

long been known to satisfy any test of *encouraging* or *aiding* someone to do

something; like marketing infringing products.

Again, with the facts and reasonable inferences being drawn in favor of the

non-moving party and against the moving party, the Court should rule that some

significant portion of the acquisition money was channeled to Muzak LLC to support

its operations, which result in the direct infringement of the '374 patent.

But then again, if those are not the facts, then it is the province of the trier of

fact to so determine.  By definition, such questions cannot be disposed of here, on this

evidence, as a matter of law.

Muzak's position on Info-Hold's claim for inducement against Holdings is

captured in a single sentence from page 9 of its Memorandum: "Info-Hold has failed

---

[10] Response to Document Request No. 11.  Attached as Exhibit F.

to identify any evidence <u>that could possibly show</u> Muzak Holdings had actual knowledge of any infringing acts."

All of the above are *indicia* of Muzak Holdings playing a significant role in providing customers, whether theirs or Muzak LLC's, with products that infringe the '374 patent. Holdings' activities were, and are, specifically designed to result in customers using Muzak on-hold and overhead music and messaging products for their intended purposes.

And, as noted, the U.S. Court of Appeals for the Federal Circuit has eliminated the requirement that, for inducing method infringement, all steps must be performed by a single actor or vicariously.[11] Thus, a defense previously available to Muzak, i.e., that in addition to the method steps performed by Muzak, the end-user performed one key step (message selection and scheduling) in the performance of the method, is no longer recognized.

Based upon the above, a jury could easily find that Muzak Holdings LLC actively induced infringement of the '374 patent. If the <u>facts</u> are otherwise, Muzak has not proved it, as a matter of law, by its motion. Muzak Holdings LLC should not be dismissed from this case.

## II: INDUCEMENT BY MUZAK LLC

In its MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANTS MUZAK HOLDINGS LLC AND MUZAK LLC FOR PARTIAL SUMMARY JUDGMENT ON INFO-HOLD'S CLAIMS OF INDUCEMENT OF INFRINGEMENT AGAINST MUZAK HOLDINGS LLC AND MUZAK LLC AND DISMISSING MUZAK HOLDINGS LLC FROM THE CASE, ("Memorandum")

---

[11] See *Akamai,* supra

Muzak LLC ("Muzak") asserts that "Info-Hold has adduced no evidence that could possibly support" a claim of inducement of infringement against Muzak LLC.[12]

That is a perplexing statement given what Muzak does. Muzak is the largest on-hold and overhead music and messaging company in the country. It actively and successfully markets remotely programmable messaging systems to customers throughout the United States. And it receives money in exchange for providing products that do what Info-Hold's '374 patent discloses. Its customer base is broad and impressive. (See Ex. G) It is also perplexing in light of the broad range of conduct that can establish inducement.

> "[I]nducement does not require that the induced party be an agent of the inducer or be acting under the inducer's direction or control to such an extent that the act of the induced party can be attributed to the inducer as a direct infringer. It is enough that the inducer "cause[s], urge[s], encourage[s], or aid[s]" the infringing conduct and that the induced conduct is carried out.[13]

Simply stated, Muzak has induced infringement of the '374 patent by providing the means for its customers to directly infringe the patent-in-suit and by performing, in conjunction with its customers, certain steps of Info-Hold's method claims.

*The Systems*

Muzak provides its on-hold and overhead music and messaging customers with message playback devices (the LE2 and the MV) that are capable of "playing selected ones" of messages previously stored on a "storage device" contained in the Muzak system. Muzak also provides its customers with the ability to control music

---

[12] Memorandum pg. 2 of 16
[13] *Akamai Tech. Inc., at* 1308 (Fed. Cir. 2012) (internal citations omitted).

and message selections remotely from an end-user's computer.  Through its marketing and licensing activities, Muzak enables its customers in practicing the claims of the '374 patent without authority to do so and "aids" them in their infringement by installing the systems and peripheral apparatus such as speakers,[14] through which the remotely programmed messages are heard by shoppers.

In short, Muzak markets a complete remotely programmable on-hold and overhead music and messaging system that infringes the '374 patent.[15]  By providing the infringing systems, Muzak "causes" its customers to directly infringe the '374 patent.  "Whoever actively induces infringement of a patent shall be liable as an infringer." [16]

<u>*Knowledge of the Patent*</u>

Muzak has had actual knowledge of the '374 patent since at least 2006.  In June of that year, Muzak was contacted by letter and telephone to discuss the patent and Muzak's then current products.  During that call, Muzak's General Counsel, Michael Zendan, denied that Muzak's products infringed the '374 patent, a copy of which had been previously provided to him.  Regardless of the accuracy of that denial, Muzak was indisputably aware of the patent at that time.  A reflexive, defensive denial of infringement, by one who admittedly is not versed in patent law, is not equivalent to a well-reasoned conclusion of non-infringement based upon careful analysis by counsel skilled in the field.  Info-Hold repeatedly urged that Mr. Zendan or someone from Muzak secure such an opinion.  But Muzak has offered no evidence that such advice or letter was ever sought or received from outside counsel.

---

[14] See Exhibit H.
[15] See Exhibit I
[16] 35 U.S.C. Sec. 271(b).

Instead, with actual knowledge of Info-Hold's patent, Muzak LLC continued to market programmable on-hold and overhead music and messaging systems that performed the very functions claimed in the '374 patent.

But because, even to this date, Muzak has not provided working models of the devices accused in this case, Info-Hold cannot speak with expert certainty as to specific components of the accused devices. However, those questions are, by definition, questions of fact for a jury to decide after hearing expert testimony, and so are not the stuff of a summary judgment at this point in this case.

It is sufficient for purposes of, and under the standards of, summary judgment that Muzak's own statements and representations make clear that its accused products infringe under the doctrine of equivalents by performing "substantially the same functions in substantially the same way to obtain the same result" as disclosed in the '374 patent.[17] At the very least, Info-Hold, as the non-moving party, has demonstrated the existence of a question of a material fact, which precludes summary judgment. And with regard to method claims in the patent, Muzak actually aided and assisted its customers by performing some of the steps in the patented methods.

*The New Standard For Inducing Infringement of a Method Claim*

Under the *en banc* ruling by the Court of Appeals for the Federal Circuit in *Akamai Technologies, Inc., v Limelight Networks, Inc.*,[18] the previous requirement that induced infringement of a method claim required that each and every step of the method be performed by a single entity or agent has been eliminated. The new standard requires only that each step be performed.

---

[17] *Graver Tank Mfg., Co., v. Linde Air Products,* 339 U.S. 605 (1950) at 608.
[18] 692 F.3d. 1301 at 1308 (Fed. Cir. 2012) (internal citations omitted).

> "That standard requires that the accused inducer [ ] knew
> of the asserted patents and performed or induced the
> performance of the steps of the claimed methods, and that
> all of those steps were in fact performed."[19]

Muzak spends a lot of money to advertise its on-hold and in-store music and messaging systems. It does so to solicit customers to acquire and use the devices and systems accused and identified here. By using the accused devices, Muzak's customers directly infringe the '374 patent. Muzak receives recurring revenues from the infringing customers. This is persuasive, if not dispositive, evidence that customers are continually using Muzak's products for their intended purpose.

Given the flurry of recent motion filings and the similarity of certain issues and points of law, Info-Hold will rest, here, on the simple but glaring point that Muzak LLC is the largest vendor of on-hold and overhead music and messaging systems in the country. Layer after layer of advertisements, publications, news releases and flyers only guild the lily. Muzak LLC markets, distributes, and services systems that practice the claims of the patent-in-suit without authority to do so. In exchange, Muzak receives annual, recurring revenues. That's the business it's in. That's what it does.

_Conclusion_

In light of the law and exhibits presented here, Info-Hold has met its burden, as the non-moving party.

In evaluating a motion for summary judgment, the Court must construe all facts and draw all justifiable inferences in favor of and draw all justifiable inferences

---

[19] Travel Sentry, Inc. v. Tropp, 2012 U.S. App. LEXIS 22691 at *26 (Fed. Cir. Nov. 5, 2012).

for the non-moving party and against the moving party.[20]   Info-Hold has not merely

relied on the allegations or denials, but has put forth "specific facts showing there is a

genuine issue for trial."[21]   As such, it has met its burden and demonstrated to the

Court that Muzak's motion should be denied; the inducement claims against both

Defendants should remain and Muzak Holdings LLC should not be dismissed from

this case.

---

[20] See *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).
[21] See *Cardiovascular & Thoracic Surgs., Inc. v. St. Elizabeth Med. Center, Inc.,* No. 1:10-cv-846,
2012 U.S. Dist. LEXIS 128802, at *9 (S.D. Ohio, Sept. 11, 2012) (internal citations omitted).

Respectfully submitted,


Dated: December 27, 2012      /s/ Daniel J. Wood
                               Daniel J. Wood (0037632)
                               4120 Airport Road
                               Cincinnati, Ohio 45226
                               Telephone: (513) 248-5600
                               Facsimile: (513) 248-5609
                               danw@infohold.com

                               Counsel for Plaintiff
                               Info-Hold, Inc.

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on December 27, 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

John F. Bennett
Kevin W. Kirsch
M. Scott McIntyre
Baker & Hostetler LLP
312 Walnut Street, Suite 3200
Cincinnati, Ohio 45202-4074
jbennett@bakerlaw.com
kkirsch@bakerlaw.com
smcintyre@bakerlaw.com


Barry E. Bretschneider
John P. Corrado
Michael E. Anderson
Baker & Hostetler LLP
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5304
bbretschneider@bakerlaw.com
jcorrado@bakerlaw.com
meanderson@bakerlaw.com


                                         /s/ Daniel J. Wood_____
                                         Daniel J. Wood